THOMAS J. THORNTON, plaintiff in error, v. JESSE McLENDON, defendant in error.

(Atlanta, June Term, 1870.)

1. NEW TRIAL—EVIDENCE INSUFFICIENT TO PROVE INSANITY—APPELLATE PRACTICE.—As the evidence in the case was insufficient to prove the insanity of the plaintiff, who was a witness for himself, and no rule of law was violated by the Court below, this Court will not reverse the judgment refusing to grant a new trial.

2. SAME—CHARGE CORRECT BUT INAPPLICABLE.—If the Court charge correctly law which was not applicable to the case made, but so that the jury could not thereby be mislead, it is no ground for a new trial. (R.)

New Trial Refused. Before Judge Bigby. Troup Superior Court. November Term, 1869.

Thornton sued McLendon on an open account for $252 83, besides interest, running from April 14th, 1861, to the 1st of January, 1865, all the items of which were for work done in a blacksmith's shop, except $65 00 for "amount of Moseley's note retained by McLendon." The plea was the general issue.

At the trial Thornton was introduced as a witness in his own behalf, and asked to look upon said account and state whether it was correct. Defendant's counsel objected to his statements, unless he could testify from personal knowledge, *and suggested that he should introduce his shop books. Thornton testified that his books were lost or mislaid, that after the war he had drawn off his accounts and thrown his books aside. The Court remarked that he could testify to the correctness of the account, if he knew it of his personal knowledge, or by McLendon's admissions. Thornton then said he could not and would not testify to each item of said account, but that he believed they were correct, and that they were worth the sums charged

Thornton v. McLendon

therefor. Upon cross-examination he said he kept the books, charged work as it was reported to him by his blacksmith, saw some of the work done but could not tell which it was, that he had made no search for his books, did not know whether they were lost or not, and that he could not and would not swear to any item of said account; that he called on defendant for settlement and no objection was made to his account, but it was not shown to defendant, and their settlement was postponed because of cross-demands between the parties. The plaintiff closed. Defendant offered no testimony. The Court charged as hereinafter stated. The verdict was for the defendant.

Plaintiff's counsel moved for a new trial, upon the grounds that the Court erred in its charge, in refusing to allow plaintiff to testify to his account without accounting for his books, and because of alleged newly discovered evidence.

The Judge charged the jury that plaintiff must make out a prima facie case before he could recover; stated to them what was necessary when one sought to prove an account by his books; told them that plaintiff had not tried to prove his accounts by his books, but by himself, and that he must show that the work was done, and that the prices were reasonable; that he might refresh his memory by looking to the account, but must swear that the work was done from his recollection of it; that if the account was presented and not objected to, that made a prima facie case, but the defendant must have been informed in some way of the contents of the account before his silence would be construed into an admission of the correctness of the account.

*The alleged newly discovered evidence was, that plaintiff was insane at the time he testified. In support of this, plaintiff's counsel presented the following affidavits: Plaintiffs, (made the 8th of December, 1869, the day after the trial,) that he had searched for his books everywhere where he supposed they might be before the trial, but could not find them; but since the trial, had found those containing so much of said accounts as were in 1861, 1862 and 1863. Dr. Little's affidavit, made the 31st of December, 1869, that on the 27th of December, 1869, plaintiff was confined to his room, completely deranged in his mind, and that he believed his mind had been impaired for months. His attorney's affidavit, stating that he had gone to Thornton's house before the trial, and "the books were searched for" and not found; that he was surprised at Thornton's uncertain manner as a witness at the trial, not then supposing him deranged: that a few days after the trial he called on Thornton on business, and discovered that his mind was deranged, and that the books now found would prove the most of said account. The Court refused a new trial and that is assigned as error.

Thornton v. McLendon

Speer & Speer, for plaintiff in error.

B. H. Bigham, by Thomas Whitaker, Ferrill, Hammond & Brother, for defendant.

By the Court—BROWN, C. J., delivering the opinion.

We do not think the charge of the Court to the jury in this case violated any rule of law. The counsel of plaintiff in error insists, that as the books of account were not in evidence, the Judge should have said nothing about the rules of law governing the introduction of that kind of evidence. It might have been more regular to have omitted the part of the charge which related to the manner of producing books of account in evidence. But as the question had been made as to the introduction of copies of the accounts taken from the original books, and the witness had testified from those copies used to refresh his memory, and as the Judge charged *the law as to the introduction of such books in evidence correctly, and stated that, as the original books were not introduced, the plaintiff, as a witness, might prove the account by his own testimony, but that he must show that the work was done and that the prices charged were reasonable, we think the case was fairly submitted to the jury, and they could not have been mislead by the charge. We therefore refuse to interfere on this ground.

Did the Court err in refusing to grant a new trial, on account of the newly discovered evidence? We think not. The main ground insisted upon was, that the plaintiff was insane because he did not swear as his counsel expected, and would not state of his own knowledge, that any item in the account, as drawn off by him from the book, was correct, and that this insanity was not discovered till after the trial. We confess we see no evidence of insanity in · the testimony, as given in under oath by the plaintiff on the trial. He stated that he kept his own books, and charged the work done in the shop as it was reported to him by his blacksmith; that he saw some of the work done himself, but could not tell which it was; that, after the war, he had drawn off his accounts from his books and had thrown his books aside; that he had made no search for them, and could not tell whether they were lost or not; and, when asked if he could specify any one item of work done and furnished to defendant, as charged in said account, he answered that he could not, and would not swear to any one item in said account. We think this looks much more like the evidence of a rational, conscientious witness, than an insane person. As he did not do the work himself, and only entered it on his books as reported to him by his blacksmith, how could he, as a conscientious man, swear to the correctness of any one item of his own knowledge? He adds in another part of his testimony, that his mind had been refreshed from looking upon

the accounts, and he would state from his belief that they were correct, but could not swear positively to any particular item.

But Dr. Little swore that on the 27th of December, some *twenty days after the trial, he called to see him and he was completely deranged in mind; and, on investigating his case, he believes his mind .had been impaired for months. And Mr. Speer, his attorney, swears that a few days after the trial, he called at his house on business,. and discovered that his mind was deranged. No witness who saw or examined him at the time of the trial, or before that time, swears to any derangement then existing. And we are lead to believe from the testimony given in by the party, that Dr. Little was mistaken as to his situation, if he intended to convey the impression that he was insane at the time of the trial. We do not think, therefore, that the newly discovered evidence of insanity was sufficient to have changed the verdict, if a new trial had been granted, and if this evidence had been before the jury on the trial.

But it is said there is newly discovered evidence as to the books, some of which have since been found. The difficulty on this point is, that there is no evidence in the record, that shows that the plaintiff had made any search for them, or exercised any diligence to produce them on the trial. When examined as a witness he swears he had not. And the only evidence that he had, is found in his affidavit made a day or two after the trial. But how does this affidavit help the case? If the affidavits of Dr. Little and Mr. Speer, are to be held sufficient to establish insanity, when he was sworn on the trial, the same affidavits prove that he was equally insane when he made the affidavit a day or two afterwards; and we have as much reason to credit his first statement on the trial, as his subsequent one after the hearing of the case.

The Judge who tried this case saw and heard the witness testify, and had a much better opportunity to form a correct conclusion in this matter than we can possible have from an . examination of the record, and, as he was satisfied with the verdict, and the case is a very small one, the contest being about a blacksmith's account of less than $100 00, upon the Confederate basis during the war, we will not disturb the verdict.

Judgment affirmed.